IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LAUREN KANE, | : | |
| | : | CIVIL ACTION FILE |
| Plaintiff, | : | NO. _____ |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| UNITED AIRLINES, INC. | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW LAUREN KANE and files this Complaint for Damages and Equitable Relief against Defendants UNITED AIRLINES, INC. showing this Honorable Court as follows:

## JURISDICTION AND VENUE

1. This civil action is brought pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq.* (the "ADA") and Title I of the Civil Rights Act of 1991 to remedy unlawful employment practices based on a disability.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1337, 1343 and 1345.

3. Venue is proper in this Court because the Defendant has conducted business in this judicial district and the employment practices involved in this dispute

occurred in this judicial district.

## PARTIES

4. Plaintiff LAUREN KANE ("Ms. Kane") is an individual formerly residing in Newnan, Georgia but currently residing in Celebration, Florida. At all relevant times, Ms. Kane was an "employee" of Defendant United Airlines, Inc. within the meaning of the ADA.

5. At all relevant times Ms. Kane was a "qualified employee" as defined by 42 U.S.C. §12111(8) of the ADA because she was able to perform the essential functions of the position she held, with or without reasonable accommodation.

6. Defendant United Airlines, Inc. ("UA") is a foreign profit corporation doing business in the State of Georgia. It may be served with process by and through its Registered Agent: CT Corporation System, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia 30046.

7. At all times pertinent to this action, UA was Ms. Kane's "employer" as that term is defined by the ADA, 42 U.S.C. § 12111(5)(A).

8. At all relevant times, UA was engaged in the business of providing commercial airline services and had at least 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

9. UA orders various products and services from throughout the United States and sells commercial airline services to customers throughout the United States.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Ms. Kane exhausted her administrative remedies under the ADA by timely filing a Charge of Discrimination with the EEOC on or about May 11, 2022, well within 180 days of the occurrence of the acts of which she complains. A true and correct copy of Ms. Kane's Charge of Discrimination is attached hereto as **Exhibit A** (the "Charge.").

11. On March 27, 2024, following its investigation, the EEOC issued Ms. Kane a Notice of Right to Sue. A true and correct copy the Notice of Right to Sue issued by the EEOC to Ms. Kane is attached as **Exhibit B**.

## STATEMENT OF FACTS

12. In February 2006, UA hired Ms. Kane to work as a Customer Service Representative ("CSR"), a position she remained in for the duration of her tenure with UA.

13. At all relevant times, Ms. Kane was a qualified individual (as defined by 42 U.S.C. § 12111(8)) because she satisfied the requisite skill, experience, education and other job-related requirements of her CSR position and she was able to perform the essential functions of that position with or without reasonable accommodation from UA.

14. Ms. Kane suffers from various serious physical impairments, including without limitation thyroid disease (hypothyroidism/thyroid carcinoma), complex, non-intractable epilepsy with partial seizures, seizure disorder, cardiac arrythmia and chronic fatigue.

15. These physical impairments impact Ms. Kane by, among other things, causing her to suffer from seizers which cause her to physically shake; she suffers from joint pain and fatigue, and her impairments prevent her from driving an automobile (during seizure episodes or close in time to them). These physical impairments impact her memory, her ability to drive, and require her to take certain medications to mitigate her seizure symptoms.

16. Because of her disability, Ms. Kane must also occasionally attend doctors' appointments to monitor and treat her medical condition(s).

17. Notwithstanding her various physical impairments, Ms. Kane was able to perform the essential functions of her position with UA.

18. UA has a "Reasonable Accommodation Program" for employees with disabilities.

19. Beginning in or about February 2021, on various occasions Ms. Kane presented UA with notes from her various physician(s) and requested from UA a reasonable accommodation for her seizure and thyroid disorders which would allow her intermittent leave when she experienced seizures or to attend doctors'

appointments (comparable to what is authorized under the Family and Medical Leave Act, but for which Ms. Kane was ineligible) and on each occasion, UA informed her that her only option was to "stay out of work" on "extended illness leave" which was an unpaid leave of absence from UA.

20. Ms. Kane took an unpaid leave of absence from UA from approximately August 21, 2021 through December 2021 because of her disability (Extended Illness Status Non-Occupational) ("EISN").

21. UA's policy on "Extended Illness Status" provides that ["[a]n employee unable to work due to illness or injury who exhausts his or her sick leave will be placed on active no-pay status for 16 days. Thereafter, if the employee remains unable to work, he or she will be placed on Extended Illness Status. Subject to the Company's reasonable accommodation process, an employee's initial EIS leave may continue for up to (a) 6 years from the first day the employee is placed on EIS leave, or (b) the employee's length of service (whichever period is shorter)."

22. Thus, UA knew, or reasonably should have known that employees it places on "Extended Illness Status," like Ms. Kane, often require a reasonable accommodation upon their return to work from extended illness leave.

23. Ms. Kane ultimately returned to work because she could not remain on unpaid leave indefinitely.

24. UA terminated Ms. Kane's employment on April 29, 2022 for alleged

5

absenteeism/violation(s) of its attendance policy (or what UA describes as Ms. Kane's "failure to achieve and maintain an acceptable level of dependability" even though UA had employed her since February 2006.)

25.  Prior to terminating her employment, UA made no effort to offer Ms. Kane any reasonable accommodation due to her disability, nor did it engage in any "interactive process" with her to determine what reasonable accommodation(s) would meet the needs of her disability.

26.  UA contends that prior to terminating Ms. Kane's employment on April 29, 2022, it "offered to engage in the [Reasonable Accommodation Process] … if [Ms. Kane] had a medical condition that was impacting her ability to do [her] job, … [h]owever Ms. Kane did not attribute any of her absences or tardies to a disability and did not accept [UA]'s offer to engage in the [Reasonable Accommodation Process]."  That is untrue, and other than offering her unpaid, "extended illness leave" UA did not engage in any interactive process under the ADA, nor did it offer Ms. Kane any reasonable accommodation for her disability.

## COUNT I

## VIOLATION OF THE ADA:

## FAILURE TO REASONABLY ACCOMMODATE
## AN INDIVIDUAL WITH A DISABILITY

27. The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to … discharge of employees." 42 U.S.C. § 12112(a).

28. The ADA's implementing regulations require employers to provide reasonable accommodation to qualified individuals with disabilities who are employees, unless doing so would cause the employer an undue hardship. The ADA regulations set forth various categories of "reasonable accommodations," one of which is "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. §1630.2(o)(1)(ii)(1997).

29. Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. 29 C.F.R. pt. 1630 App. § 1630.9.

30. Ms. Kane suffers from a disability that was known to UA.

31. Ms. Kane was qualified to perform the essential functions of her job, with or without a reasonable accommodation.

7

32. On various occasions, Ms. Kane informed UA of her need for a reasonable accommodation in her employment due to her disability. Specifically, Ms. Kane requested from UA a reasonable accommodation in the form of being permitted to take intermittent leave from work when she was experiencing seizure-related symptoms and/or she needed to attend doctors' appointments for her various physical impairments.

33. Despite her requested reasonable accommodation, UA refused to reasonably accommodate her disability and refused to engage in a good-faith interactive process to attempt to reasonably accommodate her disability.

34. UA discriminated against Ms. Kane by failing to provide her with a reasonable accommodation and by failing and refusing to engage in the interactive process required under the ADA.

35. Had UA engaged in a good-faith, interactive process to reasonably accommodate Ms. Kane's disability, and had the reasonable accommodation she requested from UA not been feasible to permit her to perform the essential functions of her CSR position, Ms. Kane would have requested UA suggest and provide her with alternative reasonable accommodations.

36. UA discriminated against Ms. Kane on the basis of her disability by using qualification standards that tend to screen-out an individual with a disability or a class of individuals with disabilities without showing that this was job-related for

Ms. Kane's position and consistent with business necessity.

37. UA's actions have caused, and will continue to cause, Ms. Kane to suffer damages for lost wages and benefits, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

38. UA's actions were done with malice and/or a reckless disregard for Ms. Kane's federally protected civil rights, entitling her to an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

## COUNT II

## <u>VIOLATION OF THE ADA:</u>

## <u>DISCRIMINATION ON THE BASIS OF A DISABILITY</u>

39. The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to … discharge of employees." 42 U.S.C. § 12112(a).

40. Ms. Kane suffers from one or more physical impairments which significantly impair her major life activity of consciousness and having normal neurological function without seizures or partial seizures.

41. Notwithstanding these physical impairments, Ms. Kane was, at all relevant times, able to perform the essential functions of her CSR duties for UA, a position she successfully performed for numerous years prior to being terminated

by UA.

42. Ms. Kane is a qualified individual with a disability.

43. On April 29, 2022, UA terminated Ms. Kane because of her disability in violation of her rights under the ADA.

44. UA's stated reason for terminating Ms. Kane's employment is/was pretextual.

45. UA has (or had) various non-disabled employees who had more extensive (non-FMLA-related) attendance/tardiness issues than Ms. Kane did but who, unlike Ms. Kane, were not terminated by UA for allegedly violating its attendance policy.

46. UA's violation of Ms. Kane's ADA rights was willful or done with malice or reckless indifference to the consequences of Ms. Kane's federally protected rights under the ADA, as amended.

47. As a direct and proximate cause of UA's unlawful actions, Ms. Kane has suffered both economic and non-economic losses in an amount to be specifically proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Lauren Kane respectfully prays that this Court:

1. Grant a permanent injunction enjoining UA and its agents from engaging in any employment practice which discriminates against the Plaintiff and other

similarly situated individuals because of their status of being disabled as defined by the Americans with Disabilities Act, as amended;

    2.  Grant Plaintiff judgment in her favor and against UA on all Counts of her Complaint;

    3. Order UA to make Plaintiff whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

    4. Order UA to compensate Plaintiff for mental and/or emotional damages and other compensatory damages suffered as a result of UA's unlawful and discriminatory acts;

    5.  Award Plaintiff punitive damages for UA's willful and intentional violations of the ADA as provided by 42 U.S.C. §§12117(a), 12203(c) and Title VII, as provided by 42 U.S.C. §1981a(b);

    6.  Order UA to award Plaintiff front pay and benefits in the amount she would have earned or until such time as she obtains or could reasonably obtain such pay and benefits;

    7.  Grant Plaintiff a jury trial on all issues so triable;

8. Grant to Plaintiff her reasonable attorney's fee and reasonable expert witness fees together with any and all other costs associated with this action as provided by law; and

9. Grant such additional relief as the Court deems proper and just.

                                          Respectfully submitted,

                                          */s/ Dean R. Fuchs*
                                          DEAN R. FUCHS
                                          Georgia Bar No. 279170

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, NW, Suite 2700
Atlanta, GA 30303
(404) 688-6800 telephone
d.fuchs@swtwlaw.com

                                          Attorney for Plaintiff